FILED

04/15/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0551

DA 22-0551

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 73N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

JADE HUNTER KERR,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADC-21-684
Honorable David J. Grubich, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Joseph P. Howard, Joseph P. Howard, P.C., Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Mardell Ployhar,
Assistant Attorney General, Helena, Montana

Josh Racki, Cascade County Attorney, Amanda Lofink, Preston
Rammell, Deputy County Attorneys, Great Falls, Montana

Submitted on Briefs: March 5, 2025

Decided: April 15, 2025

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Jade Kerr appeals the Eighth Judicial District Court's order denying his motion for new trial. We affirm.

¶3 Following a trial in June 2022, a jury found Kerr guilty of assault with a weapon. Kerr appealed this conviction in September 2022. Before he filed his opening brief on appeal, Kerr filed a motion for new trial in January 2024, alleging that the clerk of court did not comply with Montana's jury selection statutes in assembling the 2022 jury pool. On Kerr's unopposed motion, we stayed the appeal to allow the District Court to rule on his motion for new trial.

¶4 Kerr asserted that the clerk of court had violated § 3-15-405, MCA. It provides that after the clerk sends notice to the persons drawn as jurors, the clerk must certify a list of nonresponders to the sheriff, "who shall serve the notice personally on the person and make reasonable efforts to require the person to respond to the notice." 3-15-405, MCA. Kerr claimed that the clerk did not certify the list to the sheriff, who consequently did not serve personal notice on nonresponders. The District Court ruled that "the 2022 jury pool was not formed in compliance with Montana law because nonresponders were not certified by the Clerk of Court to the Sheriff, and the Sheriff did not personally serve nonresponders."

2

The Court nonetheless denied Kerr's motion for new trial, concluding that the clerk "substantially complied with the statute because [the] technical violations did not contravene randomness or choosing the pool . . . on the basis of objective criteria."

¶5     Kerr's appeal resumed following the trial court's decision.  He raises only the jury selection issue on appeal of his conviction.

¶6     "We review for abuse of discretion a district court's denial of a motion for new trial and its evidentiary rulings."  *State v. Hillious*, 2025 MT 53, ¶ 13, 421 Mont. 72, ___ P.3d ___ (citation omitted).  "An abuse of discretion occurs if a [trial] court exercises granted discretion based on a clearly erroneous finding of fact, erroneous conclusion or application of law, or otherwise arbitrarily, without conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice."  *Meine v. Hren Ranches, Inc.*, 2020 MT 284, ¶ 13, 402 Mont. 92, 475 P.3d 748 (citation omitted).

¶7     In *State v. Hillious*, we held that an identical statutory violation—the failure to certify the nonresponders list and the sheriff's failure to personally serve each person under § 3-15-405, MCA—constituted a technical, but not a substantial, violation of the statute.  *Hillious*, ¶¶ 30-31.  A technical departure from the jury selection statutes "do[es] not threaten the goals of random selection and objective disqualification" of jurors.  *Hillious*, ¶ 18 (quoting *State v. Bearchild*, 2004 MT 355, ¶ 15, 324 Mont. 435, 103 P.3d 1006) (citation omitted).  We held that "there is no evidence upon which we can conclude that personal service on nonresponders would advance the goal of ensuring a random selection process."  *Hillious*, ¶ 30. Additionally, Hillious had "not established that failure to return juror questionnaires is associated with the exclusion of an identifiable group of persons

3

who are entitled to be included in the pool of potentially qualified jurors but have systematically been excluded based on subjective criteria." *Hillious*, ¶ 30. We concluded that "any statutory error was technical and harmless." *Hillious*, ¶ 31.

¶8 Kerr's appeal presents the same issue we addressed in *Hillious*, ¶¶ 30-31. As in *Hillious*, ¶ 30, Kerr did not present evidence that failure to personally serve nonresponders advances randomness in the jury selection process. Nor did Kerr demonstrate that this technical departure from the jury selection statutes systematically excluded jurors based on subjective criteria. *Hillious*, ¶ 30. The trial court did not base its decision on an erroneous conclusion or application of law. Its decision was not arbitrary or without conscientious judgment, nor did it exceed the bounds of reason. *Meine*, ¶ 13 (citation omitted). The court therefore did not abuse its discretion when it denied Kerr's motion for new trial. *Hillious*, ¶ 13.

¶9 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. The disposition of this appeal is controlled by our recent decision in *Hillious*. The District Court's order denying Kerr's motion for new trial is affirmed.

/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON

Chief Justice Cory Swanson recused himself and did not participate in this matter.

4

Justice Ingrid Gustafson, concurring.

¶10     While I concur with this Court's opinion, I write to express the basis of my concurrence. The Court affirms the District Court's denial of Kerr's motion for new trial based primarily on the holding in *Hillious*, in which this Court determined that the jury formation process employed, which is materially identical to that asserted herein, was a technical, not substantial, violation of Montana's jury formation statutes. I dissented in *Hillious* and continue to believe the legal analysis set forth in the dissent should be employed. That said, *Hillious* and its legal analysis now control as stare decisis. As such, I concur with the Court's opinion.

/S/ INGRID GUSTAFSON

Justice Katherine Bidegaray, dissenting.

¶11     For all the reasons stated in my dissent in *State v. Hillious*, 2025 MT 53, 421 Mont. 72, ___ P.3d ___, I respectfully dissent from the Court's decision affirming the denial of Kerr's motion for a new trial.

¶12     Kerr's appeal from the Eighth Judicial District was pending before this Court when news broke of the Cascade County court's August 22, 2023 Order in *State v. Hinkle*, Cause No. 22-242 (vacating all pending 2023 jury trials). We stayed Kerr's appeal pending disposition of his January 2024 motion for a new trial. In his new trial motion, Kerr included the *Hinkle* Order and the transcripts from the underlying August 21, 2023 hearing in that matter as evidence that his June 2022 jury trial was formed in violation of § 3-15-405, MCA. In *Hinkle*, the Cascade County Clerk testified that, prior to 2023,

5

jurors were noticed with a letter, which include[d] a notice of jury service for the upcoming year, along with the jury questionnaire in a return envelope.

When asked, "what would happen to the people who didn't respond" to the notices, the Clerk answered:

Nothing. Because we were in Covid. . . . [They] just went in our jury program as not deliverable.

She further testified that she never certified those non-responders to the Sheriff for personal service.[1] Finally, the Clerk testified that, prior to the hearing in *State v. Brown*, Cascade County Cause No. 22-302(c) (speedy trial motion hearing where jury-selection violations first came to light in the county), "to be completely candid, [she] wasn't aware of" § 3-15-405, MCA, or its requirements.

¶13    The State answered that: (1) Kerr's motion was untimely; (2) the federal JSSA, "as applied in federal courts, does not require personal service"; (3) although the Clerk's "procedures were not compliant, the non-compliance was technical" under *State v. LaMere*, 2000 MT 45, 298 Mont. 358, 2 P.3d 204; and (4), in any event, *LaMere* "incorrectly conflates a statutory violation with a constitutional violation" and allows defendants to make Sixth Amendment claims "with no evidence" of "individual prejudice."

¶14    The District Court ultimately agreed with the State. However, in doing so, the court inexplicably relied on non-record "testimony received" at an unrelated January 11, 2024 new trial motion hearing in *State v. Parker*, Cause No. 20-417. The court noted that, at

---

[1] The Clerk testified that this practice changed, however, in 2023, when she began using "just a postcard" to notify selected jurors of upcoming jury service, and that the postcard did not require jurors to respond to the notice at all.

this non-record January 2024 hearing, the Cascade County Clerk apparently testified that she *did* certify non-responders to the Sheriff for follow-up personal service in 2022. This, however, would directly contradict the Clerk's 2023 *Hinkle* testimony that she *did nothing* with non-responders. Notwithstanding this apparent anomaly, the District Court then went on to inconsistently find that "the 2022 jury pool was not formed in compliance with Montana law because nonresponders were not certified by the Clerk of Court to the Sheriff, and the Sheriff did not personally serve nonresponders." Nonetheless, the court concluded that the Clerk's conduct was a "technical" violation and not a substantial failure to comply with § 3-15-405, MCA. According to the District Court, Kerr's case was distinguishable from *LaMere* because the Clerk's method did not exclude "a specific and precise portion of the community," but rather, excluded potential jurors based only on "the objective fact that he or she was a nonresponder."

¶15  Here, the Court disposes of Kerr's claim that his jury was formed in violation of § 3-15-405, MCA, under our recent decision in *Hillious*, concluding that, here, the "identical statutory violation" is also "a technical, but not a substantial, violation." Stating that "there is no evidence upon which we can conclude that personal service on nonresponders would advance the goal of ensuring a random selection process," the Court perpetuates its *Hillious* error by again failing to acknowledge that § 3-15-405, MCA, *expressly requires* follow-up personal service on nonresponders. Section 3-15-405, MCA ("[i]f a person fails to respond to the notice, the clerk *shall* certify the failure to the sheriff, who *shall* serve the notice personally on the person and make reasonable efforts to require the person to respond to the notice" (emphasis added)). *Accord Hillious*, ¶¶ 103-11

7

(Bidegaray, J., dissenting); *LaMere*, ¶¶ 70-76; *State v. Highpine*, 2000 MT 368, ¶¶ 6-8, 38-41, 303 Mont. 422, 15 P.3d 938. The Legislature has already decided that personal service on non-responders furthers the constitutional impetus of random selection and objective exclusion by writing the requirement into the law. *See LaMere*, ¶¶ 32-38.

¶16    I would conclude that, as in *Hillious* and under *LaMere* and *Highpine*, the Cascade County Clerk's failure to certify non-responders to the Sheriff for follow-up personal service was a substantial failure to comply with § 3-15-405, MCA, entitling Kerr to a new trial. To conclude otherwise undermines statutory mandates and diminishes constitutional guarantees of impartial jury selection.

/S/ KATHERINE M BIDEGARAY